UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 18-CR-20985-CMA

UNITED STATES OF AMERICA,

    Plaintiff,

v.

JAMIN CORDOBA-RENGIFO,

    Defendant.

_____/

**DEFENDANT'S SENTENCING MEMORANDUM**

Mr. Jamin Cordoba-Rengifo, by and through undersigned counsel, hereby files this Sentencing Memorandum to aid the Court in fashioning a sentence that is sufficient, but not greater than necessary, to achieve the goals of sentencing set forth in Title 18 United States Code § 3555(a). Mr. Cordoba-Rengifo respectfully requests that this Court consider the following factors in determining an appropriate sentence.

**I.   History and Characteristics of Jamin Cordoba-Rengifo**

Mr. Cordoba-Rengifo was born in a tiny town called Cuevita in the Pizarro region of Colombia on December 29, 1975. Pizarro is a small municipality on the Pacific coast of Colombia. Cuevita is made up of just a handful of small houses. The town was so small that it did not receive municipal services or utilities when Mr. Cordoba-Rengifo was a child. Their home lacked running water; they had to retrieve

1

water from a nearby well for cooking, washing, and drinking. The family home also did not have electricity and was lit by petroleum lamps.

Mr. Cordoba-Rengifo was raised along with his eight siblings under very humble circumstances. His father did his best to provide for the large family, working as a laborer in fields growing bananas, plantains, and corn. The modest wages he earned were not enough to support his large family. Mr. Cordoba-Rengifo recalls many nights as a child when he went to bed hungry.

Mr. Cordoba-Rengifo's father passed away from a stroke when Mr. Cordoba-Rengifo was just 17 years old. One of his older brother's took over as the head of the household, taking up their father's work in the fields. Despite the family's hardship, Mr. Cordoba Rengifo managed to finish high school. In the following years, Mr. Cordoba-Rengifo worked at a number of jobs. He spent approximately seven years teaching elementary school throughout the province of Narino, Colombia. Together with his older brothers, Mr. Cordoba-Rengifo used some of his wages to support his mother and younger siblings, working to fix up the family home and make it safer and more comfortable. More recently, he worked selling shrimp and remodeling apartments in Barranquilla. Mr. Cordoba-Rengifo worked hard throughout his adult life to help provide for himself and his two daughters, who are now adults.

Mr. Cordoba-Rengifo's home and lifestyle reflected his modest means. Even during the period when Mr. Cordoba-Rengifo was involved in narcotics trafficking, he never lived under the lavish conditions portrayed in films about South American traffickers. Just prior to his arrest, Mr. Cordoba-Rengifo was living in a rented room

in an apartment in Barranquilla. He shared the apartment with several friends, paying approximately $71 per month for his share of the rent.

Mr. Cordoba-Rengifo's modest lifestyle is reflective of the relatively minor role he played in the instant offense and the small amount he stood to personally gain. Mr. Cordoba-Rengifo acted as a kind of mid-level broker in the deal involved in this case. He and his co-defendant, Ivan Gonzalez-Ramirez, expected to receive $300 for each of the five kilograms of cocaine delivered to them by the confidential informant. This sum was to be shared between the two of them. Mr. Cordoba-Rengifo, thus, expected to earn less than $1,000 from this deal.

## II. Consideration for the Time Mr. Cordoba-Rengifo Spent in Colombia

Another factor the Court should consider in determining Mr. Cordoba-Rengifo's sentence is the appalling conditions he was subjected to while incarcerated in Colombia, awaiting extradition. Upon his arrest in Colombia, Mr. Cordoba-Rengifo was imprisoned first at a prison called La DIJIN for a short period before he was brought to La Picota in Bogota. There he stayed until he was extradited to the United States on March 5, 2020. In total, Mr. Cordoba-Rengifo spent nearly 10 months in custody in Colombia. The bulk of that time was spent at La Picota, a Colombian facility that has been criticized for its human rights violations. *See* United States Department of State, *Country Reports on Human Rights Practices 2014: Colombia* (20140), *available at* https://www.state.gov/documents/organization/236888.pdf. Specifically, the Department of State notes that Colombian prisons are overcrowded, unsanitary, and neglect to provide detainees with basic health care and nutrition. *Id.*

at 6. The National Prison Institute (INPEC) declared a state of emergency for the country's prisons due to the horrible health problems experienced by the inmates and exacerbated by the lack of clean water and poor sanitary conditions. *Id.*

Mr. Cordoba-Rengifo's experience was consistent with those reports. He recalls extreme overcrowding at both La DIJIN and La Picota. At La DIJIN, he was held together with five other men in a cell built for two people. He often was forced to sleep on a dirty mat on the floor outside the cell, as there was simply no room for him inside it.  His access to running water at La DIJIN was sporadic at best; while there often was running water, the guards at that facility denied inmates the opportunity to use it to bathe or wash their clothing unless they could pay for those privileges.

At La Picota, running water and plumbing were a serious problem, as well. The toilets—both inside and outside the cells—would frequently overflow, sending streams of waste into the inmates' living quarters. Mr. Cordoba-Rengifo and his fellow cellmates took it upon themselves to try to clean the bathrooms and toilets to try to keep them in better working order. Their efforts, while well-intended, were often unsuccessful. Mr. Cordoba-Rengifo and several fellow inmates also scraped together a small sum of money to buy their own water purifier, so they could try to access clean water to drink, as the prison did not provide inmates with even this most basic necessity.

Corruption and abuse by guards were also a major problem at La Picota. Inmates with money could buy additional privileges from crooked guards. Men like Mr. Cordoba-Rengifo, without such means, were unable to gain access to the basics,

like regular showers and clean clothes. A group of guards also took it upon themselves to destroy the personal belongings of inmates, cutting clothing and destroying basic hygiene articles.

Even access to safe food was not a given at La Picota. Mr. Cordoba-Rengifo recalls that, while food was generally provided, it was not always fit to eat. On at least one occasion, the food he and his fellow inmates were provided had broken glass in it, and food was often delivered uncooked.

Mr. Cordoba-Rengifo submits to the Court that his history, including his history of employment and the violations he suffered while detained in Colombia, merit consideration for a variance from the advisory sentencing guideline range. Although his background in no way excuses the crime for which he has pleaded guilty, he asks this Honorable Court to consider his personal characteristics and the way he has conducted himself since arrest in fashioning an appropriate sentence.

WHEREFORE, Mr. Cordoba-Rengifo respectfully requests this Court take into consideration the foregoing circumstances in determining an appropriate sentence in this matter.

Respectfully submitted,

MICHAEL CARUSO
FEDERAL PUBLIC DEFENDER

By:   /s/Abigail E. Becker
Assistant Federal Public Defender
Florida Bar No. 72284
150 W. Flagler Street, Suite 1700
Miami, Florida  33130
Tel:  305-530-7000
abigail_becker@fd.org

**CERTIFICATE OF SERVICE**

I HEREBY certify that on September 10, 2020, I electronically filed the foregoing document with the Clerk of the Court using CM/ECF. I also certify that the foregoing document is being served this day on all counsel of record via transmission of Notices of Electronic Filing generated by CM/ECF or in some other authorized manner for those counsel or parties who are not authorized to receive electronically Notices of Electronic Filing.

*/s/Abigail Becker*